We will hear argument next in No. 2011-1211, JOAO BOCK v. SLEEPY HOLLOW. Mr. Warrick, when you're ready. Before you start, and before we start your time running, just to assist me, my Portuguese is a little rusty. Is this the Joe without a tilde or Jean with a tilde? Neither. JOA. JOA. Okay. JOA. All right. Wouldn't have guessed it. Good morning. May it please the Court. We can go ahead and start now. Okay. Everyone admits that mistakes were made at this trial. The plaintiff admits it, the defendant admits it, the district court admits it. The dispute is what were the effects of these mistakes. The defendant and the district court intend that the mistakes were harmless and didn't affect the outcome. And in some instances were not preserved for review. And in some instances that is an alternate argument. Correct. The plaintiff contends that not only were these errors highly prejudicial, one was case determinative, and these errors weren't reversal and remand. The first error that the plaintiffs considered harmful as opposed to just harmless was the submission of interrogatory number one to the jury. And interrogatory number one essentially asked the jury to decide whether Mr. Joa and certain other witnesses who testified at trial could be considered one of skill in the art or one of ordinary skill in the art. The plaintiff argued and it submitted a trial memorandum opposing the submission of this interrogatory to the jury. First of all, it's very unclear as to what exactly the court was trying to get at here because the interrogatory conflated several different issues in the patent law. Is it trying to find out what the level of ordinary skill was? Is it asking rather about the hypothetical person having ordinary skill in the art? Or is it questioning what the qualifications are for a witness to provide expert testimony, which it seems to be doing since it lists the people who actually provided expert testimony at trial. Now, we don't dispute that the court could have decided that Mr. Joa was not qualified to provide expert testimony. Conversely, the court could have decided that Mr. Joa was qualified to provide expert testimony. Those would have been proper determinations to be made under Rule 702. You don't have to be a person of ordinary skill in the art in order to provide expert testimony. That's certainly normally the case that you are at least a person of skill in the art. Right. But it's not necessary, right? Agreed, Your Honor, and that's why we say that the court could have allowed the testimony. The court could have rejected the testimony. What the court shouldn't have done is what it did. It allowed Mr. Joa to testify as an expert. It got cold feet and asked then the jury to come to the rescue and determine whether what it had done in allowing Mr. Joa's testimony was correct. Yeah, but that's why I asked the first question. The jury's conclusion that he was not a person of ordinary skill in the art doesn't necessarily answer the question of whether he should be deemed to be qualified as an expert, right? I agree, Your Honor. All right, so we don't know from either the submission or the answer that the jury gave as to what the jury may have concluded as to his status as an expert if, in fact, the jury even adverted to that question with respect to this interrogatory, correct? Correct. All right. And let me ask one other question. I looked at the transcript, and there was brooded about in some detail what I think ultimately comes down perhaps to a confusion about what this term, person of ordinary skill in the art, means. I mean, does a person who has extraordinary skill in the art not qualify as a person of skill in the art? And I believe Mr. Joa's position, at least, was that he was a person of extraordinary skill in the art. And I think, yes, Your Honor, I agree. And so could one read this interrogatory answer by the jury as meaning, no, he's not just a person of skill in the art. He's a person of extraordinary skill in the art. Anything's possible, Your Honor. But, I mean, that evidence was before the jury, correct? Some of that evidence was. Some of the testimony about extraordinary. Yes, there was some evidence of that. Don't call me an ordinary person. I'm extraordinary. Inventors generally consider themselves to be ordinary. But the problem, Your Honor. How do you end up seeing the prejudice then? I mean, this seems. Because Mr. Joa, one of the first questions on cross-examination was, if I can find it. Have you any experience in this field? No. Well, that was asked. Specifically, defense counsel asked, and you are not a person of ordinary skill in the art, are you? And Mr. Joa answered, his honest opinion was that he was not, because he didn't consider himself a banking or Internet expert. So if he had already testified that he did not consider himself one of ordinary skill in the art, what was the point of asking the jury this question? We already had testimony on the record. So the only effect it could have had on the jury is to convince them that the court was questioning Mr. Joa's competence and credibility. I mean, that's. I think that's a fair reading. This sort of questioning occurs if you have, for example, a patent involving a plumbing connection. And you have a PhD, the head of the mechanical engineering department at MIT testifying as an expert on some aspect of the case. And the question comes up, are you a person of ordinary skill in the art in the plumbing business? No. But that doesn't mean he's not qualified to be an expert with respects to aspects of the case. It doesn't seem to me there's a connection between the two that necessarily suggests that submission of this question to the jury was there. I mean, it was harmful. Yeah. Well, we consider it harmful, Your Honor, because the point would be that there was no reason to ask that question. Mr. Joa acknowledged that he didn't consider himself one of ordinary skill in the art. I see. And beyond that, the issue really should have been decided long prior to trial. Because the way it was presented to the jury, it's more a question of is he qualified to give expert testimony as opposed to just give fact testimony. Certainly he was entitled to a fact testimony. But once you question his credibility on one area of testimony, you're essentially questioning his credibility on all of his testimony. We think the next issue, Your Honor, that we considered to be harmful was the submission of interrogatory number two. And interrogatory number two asked the jury to decide whether the preamble of the asserted claims and specifically the language transaction security apparatus was a limitation. Now, my understanding was, correct me if I'm wrong, that you did not object to the submission of that interrogatory. No, that's not actually correct, Your Honor. The issue was brief. There was a trial memo. It was objected to. The court indicated that it was going to either submit that question to the jury or was going to rule against the plaintiff. And given that option, the submission was preferable to an outright rejection of the issue. Okay. So if you're wrong legally on the question of the preamble, then this issue goes away. Yes. Okay.  Two reasons. The first is the preamble issue was decided during markment. In fact, it was the defendant who asked for definitions for both transaction and security. The term security only appears in the preamble. And the title of the invention, Transaction Security Apparatus and Method, indicates as well as the specification that security is a critical feature of the claimed invention. So when defendants agreed to definitions during the markment phase, that ship had sailed. It was improper for them at trial to then reverse course and try to argue that the preamble was not a limitation when they, in fact, had insisted on having it deemed a limitation during markment. There's a second problem, Your Honor. It's a question of law. Claim interpretation is very clearly a question of law for the court to decide, and there was absolutely no reason, nor should this question be considered. Right, but I think we already resolved that issue, right? In response to my question at the outset of this portion of the discussion, you said, well, if the decision on the preamble is right, the jury submission goes away. Well, I think one other point… Right, you turned back. It really is just one question, the preamble, right? I think so, but one other thing that I should bring to your attention is that, again, it was briefed by the plaintiff. The court decided to go with representations made by defense counsel, and specifically counsel stated that the Federal Circuit has long stated that the preamble of a claim has no legal significance. And a few moments later, counsel added that the Federal Circuit has been very clear on this. It's very rare. I can only think of one case in which the preamble has been considered to have legal significance in the past 25 years. Well, the statement might be true in the sense that counsel could only think of one case, even though there have been more. It wouldn't be the first instance in which a trial lawyer overstated the state of the law, right? And I'm certainly not accusing anyone of… No, but the question is, what's the error in the fact that a lawyer overstates the case? Maybe leads the judge to reach a particular conclusion. Correct. The question is, is the conclusion right or not? That is the question, and obviously we believe that the conclusion was wrong. Okay. The third error is that the court allowed a large degree of ad hominem attack against both Mr. Joa and the patent examiner. Were objections raised at the time? From the transcript, Your Honor, it certainly does not seem that plaintiff's counsel… I did not see any. …dealt with it as certainly I would like to have seen it dealt with. At the same time, the district court does have some responsibility in maintaining a level playing field throughout the course of a trial, and some of these claims are fairly egregious. But aren't you required to object to trial? And if you don't, isn't there a consequence to that? Well, I think that, yes, it's a much better practice to object to trial. I think at some point, though, statements can go so far that the Court of Appeals can take it and deal with it to create or to expurgate what was a fundamental error. Doesn't it have to have sort of a manifest injustice situation where, beyond reasonable doubt, we are certain that the jury would have reached a different verdict? To overcome the problem of not having objected, doesn't the error have to be monumental? Well, I think… Demonstrably so? I think the language that the case uses is fundamental. And I think… Same notion. I think there's an argument that it was fundamental because not only did the court not object to any ad hominem attacks, it actually applauded them. Because after the jury was dismissed, the court made comments on the record to counsel. And one of the comments was, Mr. Chairman, what page is that in the appendix? This is A1141. 1141. Lines 8 through 15, and I'll just read it. Mr. Jones took a gamble, and it was a very, very successful gamble, quite obviously. He went on an ad hominem attack on Mr. Joa, opened with it, closed with it, took the risk rather than offend the jury, which is the risk you take in that type of attack, that it would pay off by showing the real weakness of the case. And so his approach to how to sum up… You're on 1141. Is that correct? That's what I have it listed as. Is that the bottom of the page? Page 65 of the transcript from March 16th. No, that's not… We don't have… March 16th? Yes. We seem not… Is there a number at the top of the page or the bottom of the page? Where's the number you're reading from? Upper right-hand corner? I had a copy made for myself. 1141? March 16, 2010 transcript, page 65. Page 65. I think we do not have page 65 of the March 16th. We have some of March 16th. By the way, there were several citations to the transcript that didn't find their way into the joint appendix. So that's inconvenient. We had to order the whole record. We apologize for that. Let's make sure that the JA contains everything, at least everything that's cited. Of course, Your Honor. Well, we have the March 16th transcript at 1149 and selected pages, but we don't happen to have that page. Go ahead. And just to finish the quote, it was… So that it would pay off by showing weakness of the case. And so his approach to how to sum up and how to try this case turned out to be very effective, and I congratulate him. So I think… Well, that wasn't said in prison for curiosity. That was not said in front of the jury. Okay. Thank you. We'll save your remaining rebuttal time and go to Mr. Jones. Thank you, Your Honor. May it please the Court. I think a lot of the key issues have already been dealt with in some respect. There are really three issues that the Court has to decide today, and I'm setting aside the unitherm point that we made in our brief. I recognize that's a somewhat of a hard thing for this Court to rule that unitherm completely takes care of this. There's easy ways for the Court to affirm the judgment of the trial court, and we think perhaps the wiser course is to take the easy way. So what we're left with are the issues that were not preserved or that were in fact invited, and then the issue that was preserved, which is the person of skill in the art interrogatory number one. The preamble issue, Your Honor, was not only not preserved, but this really is invited error. Well, they say that the judge had already decided this case against them, and all they had left was the hope that maybe the jury would come out differently. So sure, they were – once the judge said, I'm a guinea, they were willing to take their shot on hoping the jury would come out differently. Well, that's – Error is in the judge's original – It does seem to me that in our colloquy with Mr. Ward, we essentially focused in on what the crux of this argument on this is, the question of the merits of the preamble argument. Wouldn't you agree? Yes. So why don't we talk about that? All right. If we want to get to the merits of the preamble argument, there is – well, there is no question that first of all, the jury was doing this as an advisory jury to the judge. Well, never mind the jury. Okay. Just the merits of the preamble. Then there is really nothing wrong with the instruction that the plaintiffs tendered to the court too often. It was consistent with this court's decisions, the Bialytic case recently, Bicon v. Strawman, all the cases that are on the issue of the preamble. It laid out for the jury the choices. Is this a significant, critical part of the claim? Is it something that breathes – I believe the words are – recites essential structure or steps, or is it necessary to give life, meaning, and vitality to the claim? That was one option given to the jury. The second was, does it merely give a descriptive name to a set of limitations? Is it a purpose or use statement? And based on the evidence at the trial, it was clearly the latter, and that's what the jury found. And what the court – well, what the jury found. Mr. Joel was asked on a number of occasions during the course of the trial, what's the first element of this claim? What's the first element of that claim? Not once did he say it's the preamble in his direct testimony during his case in chief. He always started out with it's this element or that element. You can look on – or I'm sorry, appendix pages 781, 782, 783 for examples. But most people would give that answer simply because the, quote-unquote, limitations of the claim sort of follow the transitional words comprising or consisting of. And that's, in fact, exactly what – It sort of begs the question of whether things in the preamble are, in fact, limiting or not. And that's what Mr. Joel said. Remember, he is a patent lawyer in his own right, and he testified at great length about the patenting process. And when he was asked to talk about the claims and describe them, he said the claim language starts after the wherein or the comprising language. Not once on his direct did he say that the preamble – Well, that's true, the claim language does. The question is whether or not you're going to read into the claim language, the preamble. The preamble is never the claim. The question is whether, as a matter of law, looking at the invention as a whole, we decide that we have to amend the claims by including the preamble language. Was Mr. Zhao asked whether he thought the preamble was limiting? Not until the rebuttal case, Your Honor. Not until the rebuttal case. What did he say? He said at that point in time it was limiting, that it was – That's the first time the question was asked of him, right? By his counsel. It was his effort to distinguish his invention from the prior art that we had put on mountains of evidence about during our case in chief. And this was his really 11th hour effort to try to rescue his patent from that patent, that prior art. He had never said in his deposition, testimony, pretrial, that the preamble had any significance. He called it an introduction during two or three times when he was asked on his direct examination, tell us about what's this transaction security apparatus language? And he said, oh, it's just an introduction. And you can find that at pages 788, 89, and 1102. Is the question whether the jury was right on the question or whether, as a matter of law, what we think the answer is? It's my understanding, Your Honor, that their appeal is it should not have been submitted to the jury. They submitted it. They asked the court to do that. So if I'm right on what they're appealing, then the question really is should it have gone to the jury? If the issue is, well, was it a correct finding by the trial court based on the jury's advice, we would argue that it absolutely was. If you read the language in Claims 108 and Claim 267, which were the two independent claims, if you read all that language, there is the words transaction security apparatus, which, first of all, don't really say much. Everything that's necessary to support the structure, integrity of the claim, as was described, follows the introductory preamble language there. Claim 108 talks about communication devices, limitations and restrictions on the use of an account, communication back and forth between parts of a computer. The structure of Claims 108 and Claim 267 are all in the language of the claim and the transaction security apparatus. It's just a name. It's just a name. And again, I would refer the court to – it's not that Mr. Joe's counsel just gave in on this issue. He was specifically asked, and that's on page 1143 of the appendix, do you want the jury to be instructed on the preamble? And his answer was, yes, Your Honor, I think the jury should be instructed. And thereafter, he tendered the substantive language that was given to the jury, and this appears on pages, I believe, 586 – yes, 585 and 586. Oh, no, I'm sorry. The question, though, as posited by Mr. Ward is that this came after the district court had already indicated how the district court was going to rule on the question of the preamble. No, Your Honor. Am I misunderstanding what he said? I don't know if you are, but if he said that, that is not my memory. You were here. Yes, yes. Closer to him than I was. Yes, he did, but that's not the way it happened. What happened was this. We moved pretrial to exclude Mr. Joe's testimony as being – oh, I'm sorry. We're talking about – we're still on the preamble. This didn't even come up. Nobody said the word preamble, really, except for what Mr. Joe said about it being introductory until the rebuttal case. It was never talked about before that. We objected to that as being really not the law, just to say that it's – as a matter of law, these words were limiting. We said that's wrong, and we filed a brief, and they filed a brief on the issue over the weekend, really almost after the case was over. The judge said, after reading JBTS's trial counsel's brief, I'm convinced I should submit this issue to the jury. He didn't make a conclusion at that point on the preamble as to whether it was or was not limiting. He decided that I'm going to ask the jury for its advice on the question, and that's all he did. He did say – What did your adversary's brief to the judge and the one that you responded to, what did they say in their brief? They said it should be considered limiting as a matter of law, and our brief said, no, it should not be considered limiting as a matter of law. Neither one of you said anything about whether it goes to the jury. No. I don't think either brief mentioned whether it should go to the jury or not, Your Honor. And the trial judge said, having read their brief, I'm going to submit it to the jury for the jury's advice. That's what was done. There was no point at which the trial judge said, if it doesn't go to the jury, I'm ruling it against you. I do not recall any such statement made by the trial judge on that issue. As you can well appreciate, that makes a big difference in the – whether this is invited error or not. Yes. Because if you're presented with a fait accompli and the best you can do is to hope that the jury will bail you out, it's an entirely different matter from saying in the first instance, I want this to go to the jury. Yes, Your Honor. I would agree. But you say that never happened. Not on the preamble. Not on the preamble. Right. He said that with respect to Mr. Joel being a person of skill in the art. He said, if I find it, I will find that he's not. Right. All right. And then we submitted that issue to the jury. All right. And, again, on that issue – and we do concede they did preserve that. Your Honor, I need to correct. We said in our brief they didn't. That was a mistake. Kind of a hard transcript, but we did – I did find a place where Mr. Freed preserved that, and I regret that error and want to correct the record. But that didn't matter. It really didn't matter. First, it was an advisory use of the jury on the person of skill in the art issue. There was nothing wrong with asking – Yes? At what stage in the game did the parties get together and say, this is not a real jury case, this is an advisory case? Rule – federal rule, I believe it's 49, Your Honor, says that you can waive a federal civil procedure rule, 49. It says you can waive your jury demand if before the jury is discharged. Yes, 49A3. If before the jury goes back, you can waive the jury demand on an issue of fact raised by the evidence unless before the jury retires, the party demands its submission to the jury. And that was not done – the trial judge sat on the person of skill in the art issue. So then there was no waiver of the jury trial under that issue? On that issue, if there was – well, there was a waiver under – How did it get to be an advisory jury? The trial court told counsel during trial, on some issues, I'm going to use the jury as an advisory jury. Can a trial judge do that? Yes, under federal rule 39, Your Honor. He is allowed to do an advisory jury. And there's no Seventh Amendment problem because plaintiff says that the issue of whether someone is a person of skill in the art is a question of law. If, in fact, it's a question of law, then there is no Seventh Amendment right to a jury. And so, therefore, it was not error for the judge to use the jury in an advisory capacity. You also have to look at the instructions as a whole if you're going to decide whether or not there was the sort of fundamental error – or, I'm sorry, this would be abuse of discretion, the seriously erroneous or miscarriage of justice. If you read the instructions as a whole, they're not that sort of error in them, if at all. There was no objection to the standard charge, which is quoted at length at page 19 of Mr. Joe's brief. Most of the lengthy substantive charge was submitted without any objection. Most of the substantive charge came right out of the model patent instructions that have at least some connection with this court. We're talking about one of seven interrogatories, and part of this case, Your Honor, is interrogatories three through seven, which are the key questions. Was there infringement? Are the patent claims invalid? Interrogatory number one doesn't touch any of those. I would note in response to one of Judge Bryson's questions, this is a rare case where the inventor really was not a person of ordinary skill in the art. This court decided a case called Byrne about three weeks ago that talked about this rare case where the inventor would not be a person of skill in the art. Mr. Joe admitted he wasn't. He admitted he'd never worked in a bank. He had no knowledge of banking operations. He had never done any internet banking. He'd never done any online or remote banking, and he didn't know anything about any of those subjects. He was a patent lawyer, and he had a master's in computer. That was it. So he claims to have invented an internet banking product. He is that rare person, sort of the Ph.D. mechanical engineer who's never done any plumbing and who wants to testify about what a person of ordinary skill in the art would know, believe, or understand on issues of invalidity and doctrine of equivalence infringement. And that simply would not be proper, and that's what we had here. Your Honor, this case was fairly tried. Mr. Joe and his counsel did what they thought they needed to do. Our client spent an enormous amount of money getting to where we are. The only miscarriage of justice would be is if they get to do it over again. Thank you. Very well. Thank you, Mr. Jones. Mr. Ward, you have a little bit of rebuttal time left if you want to use it. I'll be brief, Your Honor. First, with respect to the advisory jury, plaintiff requested a trial by jury of all issues so triable. It never waived that request, and it is not up to the district court or to the defendants to convert a Seventh Amendment jury into an advisory jury. In fact, the judge recognized that in the record at – this is A1141. I found it. It's starting at line 19. The judge notes that, of course, in the patent world, it's a little different from the other cases we deal with where we often use juries as advisory. But in the patent world, that's what you're supposed to do. You're supposed to turn to the jury what you have, any factual disputes that lead to legal conclusions that must be drawn by the judge. So we're doing what we're supposed to be doing. A1141. Lines 19 to 25. So although that's a little bit muddied, I think it's a clear indication that the judge realized that this was not an advisory jury. And the issue of advisory jury is something that was hatched after the fact to explain away the fact that improper interrogatories were submitted to the jury. The only other point I'd want to make is that, again, I think the court understands that the real issue here is the preamble. And the key issue, the key word is security. It's used throughout the patent. Security, the features of security that were provided in this patent were what distinguished it over the prior art. And when the jury wrote security out of the claims, it changed their scope and it skewed their determinations on validity and infringement. Thank you. We thank both counsel. The case is submitted.